ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | § |
| | | § |
| v. | | § |
| | | § |
| THOMAS L. GERRY | (01) | § |
| HERBERT PHILIP ANDERSON | (02) | § |
| BRITTANY KRAMBECK | (03) | § |
| JOHN REGINALD HOLT | (04) | § |
| MIYOSHIA WYLYNN NANCE | (05) | § |
| WADE PHILLIP SMITH | (06) | § |
| ROBERT LESLIE BAYS | (07) | § |
| DONALD JAY DAVIS | (08) | § |
| FERRELL COLEMAN | (09) | § |
| ROBIN BERTHELOT | (10) | § |
| BRIAN EUGENE PERRYMAN | (11) | § |
| STEVEN RAY ADAMS | (12) | § |
| REBEKKA RHEA BAKER | (13) | § |
| KENT DANIEL BURTON | (14) | § |
| LYDIA FAYE CEDILLO | (15) | § |
| RENE GLORIA CRUZ | (16) | § |
| JUAN GLORIA CRUZ | (17) | § |
| ROGER GEORGE FLITTIE | (18) | § |
| GABRIEL HERNANDEZ | (19) | § |
| DAVID LEROY KRAMBECK | (20) | § |
| KELLY JOSEPH MURPHY | (21) | § |
| ZANA DANKO SESSIONS | (22) | § |

Criminal Complaint
No. 4:09-MJ-205

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG 1 9 2009

CLERK, U.S. DISTRICT COURT
By_____
Deputy

    I, the undersigned Complainant, being duly sworn, state the following is true and

correct to the best of my knowledge and belief:

## Count One

    On or about February 1, 2005 and continuing thereafter until the filing of this

Complaint, in Tarrant County, in the Fort Worth Division of the Northern District of Texas,

and elsewhere, **Thomas L. Gerry, Herbert Philip Anderson, Brittany Krambeck, John Reginald Holt, Miyoshia Wylynn Nance, Wade Phillip Smith, Robert Leslie Bays, Donald Jay Davis, Ferrell Coleman, Robin Berthelot, Brian Eugene Perryman, Steven Ray Adams, Rebekka Rhea Baker, Kent Daniel Burton, Lydia Faye Cedillo, Rene Gloria Cruz, Juan Gloria Cruz, Roger George Flittie, Gabriel Hernandez, David Leroy Krambeck, Kelly Joseph Murphy**, defendants, and others both known and unkown, did intentionally and knowingly combine, conspire, confederate and agree to engage in conduct in violation of 21 U.S.C. § 841(a)(1), namely to distribute and possess with intent to distribute more than 500 grams of methamphetamine, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

## Count Two

On or about June 22, 2009, in Tarrant County, in the Fort Worth Division of the Northern District of Texas, Zana Danko Sessions, defendant, did intentionally and knowingly use a communication facility in causing and facilitating the commission of a felony offense under the Controlled Substances Act, to wit: the unlawful distribution of hydrocodone, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 843(b).

I further state that I am a Task Force Officer of the Drug Enforcement Administration and

that this Complaint is based upon the following facts:

1.      I am employed as a Criminal Investigator at the Tarrant County District Attorney's Office. I am sworn as a Task Force Officer with the U.S. Drug Enforcement Administration in Fort Worth, Texas. I have been assigned as a Narcotics Investigator for over ten years. I have been assigned as a Task Force Officer with the Drug Enforcement Administration (DEA), Fort Worth, Texas since 1999. I have previously investigated violations of Title 21, United States Code, Section 841(a)(1); Title 21, United States Code, Section 846; Title 21, United States Code, Section 848; Title 21, United States Code, Section 843(b); and Title 18, United States Code, Section 1956.

### *Interviews of SOI#1 on October 15 and October 20, 2008*

2.      On October 15 and October 20, 2008, a Source of Information [SOI#1] -who had been arrested for parole violations - was interviewed. In these interviews, **SOI#1** identified **Thomas L Gerry** as a large scale trafficker of methamphetamine with whom **SOI#1** had conducted drug business for many years. **SOI#1** said **Gerry** was a former member of the

Bandidos motorcycle gang and was **SOI#1's** source of supply. **SOI#1** said he had distributed methamphetamine for **Gerry** since 2007. **SOI#1** said that **Gerry** was supplied by unknown Hispanics whom he believed were from Dallas. **SOI#1** said the methamphetamine is delivered to **Gerry** at **Gerry's** residence on a weekly or bi-weekly basis in 5 to 10 pound quantities. **SOI#1** said that the drugs are kept in Tupperware containers in a desk in the back bedroom of **Gerry's** residence at 2116 San Fernando, Bedford, Texas. **SOI#1** said that over the past year **Gerry** had become more brazen in his drug trafficking: that more and more transactions are plainly conducted at the residence and that **Gerry** has been acquiring more noticeable, expensive assets with his drug profits. **SOI#1** said that because of **Gerry's** lack of caution that **SOI#1** and **Andy Anderson** confronted **Gerry** about this. **Gerry** took offense and **SOI#1** had to separate **Gerry** and Anderson during a very heated conversation. **SOI#1** said that **Gerry** had recently used some of his drug profits to establish a remodeling company that **SOI#1** believed was called "Hammer Time Construction", and that **Gerry** had even more recently purchased an interest in AJ's Wrecker Service in Dallas. **SOI#1** said that **Gerry's** parole officer is **Zana Danko** and that he thinks she is complicit in **Gerry's** drug dealing because she turns a blind eye to his activities[1]. Further, **SOI#1** stated that he had delivered hydrocodone pills to the parole officer at **Gerry's** instruction.

### *Arrest of Robert Bays and seizure of 222.9 grams of methamphetamine on January 21, 2009*

3.     On 01-21-2009, members of the FWRO were conducting surveillance at 2116 San Fernando, Bedford, Texas the residence of **Gerry**. At approximately 3:19 p.m. investigators observed a maroon motorcycle, Texas license plate 791L4P, was observed parked in front of the residence. At approximately 3:34 P.M. **Robert Leslie Bays** exited **Gerry's** residence, put a few items in the saddlebag on the motorcycle and departed the residence. Surveillance was maintained on **Bays** by FWRO personnel.

---

[1]     Affiant notes that this statement of SOI#1 has been partially corroborated by subsequent investigation. A subsequent query of the records of the Texas Workforce Commission showed that Zana Danko (SSN: 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) was an employee of the Texas Department of Criminal Justice in the 2007 and 2008. A record search of the public records of Tarrant County reflected that Danko married Gregory Sessions on January 2, 2007 and that her maiden surname was Pate. The Tarrant County records further reflect that the original marriage certificate was mailed to 5558 Northfield Drive, Fort Worth, Tx. 76179. A Texas Driver's License has been issued to Zana Danko Sessions at that same address. Sessions was observed at Gerry's residence by surveillance agents on April 1, 2009. An analysis of the toll records for the cellular telephone used by Gerry, shows 34 text messages to that telephone from a cellular telephone (682-564-4919) subscribed to by Zana Sessions between 01-20-2009 and 02-19-2009. While most of the text messages are during normal business hours, two have been sent before 7:00 a.m. and three have been sent after 6:00 p.m. - one of those at 10:36 p.m. On April 28, 2009 Affiant placed a call to one of the offices of the State Parole Board in Fort Worth and asked to speak to "Zana". Affiant was advised that there was a parole officer named Zana Danko but that she worked at a different office in Fort Worth.

4.      Affiant contacted the Wise County Sheriff's Department and ask for assistance in stopping **Bays** on a traffic stop. Deputy Payne was assigned to assist FWRO personnel. Surveillance was maintained on **Bays** until he exited Hwy 287 at Hwy 114 in Wise County, Texas. Deputy Payne was coincidently at that intersection and **Bays** proceed through the stop sign at that intersection without coming to a complete stop. Deputy Payne also observed several other violations and conducted a traffic stop for the traffic violations. Deputy Payne approached **Bays** and requested his drivers license, proof of financial responsibility, and his motorcycle drivers safety permit. **Bays** said that the motorcycle was not his, he did not have insurance, and that he did not have a motorcycle safety permit. **Bays** did provide Deputy Payne with his Texas drivers license. Deputy Payne informed **Bays** that he was being placed under arrest for no motor vehicle insurance and operating a motorcycle without a helmet and not meeting state guidelines to allow him to do so.

5.      In a search incident to arrest Deputy Payne found on **Bays'** person two large clear plastic baggies containing a large amount of suspected methamphetamine and another baggie containing suspected cocaine. The seized suspected drugs were analyzed at the DEA-SCL and was found to be 222.9 grams of 34.2% pure methamphetamine hydrochloride and 4.4 grams of 71.9% pure cocaine hydrochloride.

6.      Affiant notes that **Bays** was, on two prior occasions - November 14, 2008 and December 8, 2008 - followed from **Gerry's** residence and found to be in possession of large quantities (in excess of 150 grams) of methamphetamine.

### *Arrest of Robin Berthelot and seizure of 54 grams of methamphetamine on February 27, 2009*

7.      On 02-27-2009, members of the FWRO were conducting surveillance at 2116 San Fernando, Bedford, Texas the residence of **Gerry**. Surveillance was established on a 2007 Black Toyota 4 Runner, TXLP# 909RSB, investigators had previously identified as **Robin Berthelot's** vehicle. At approximately 2:53 pm, the 2007 Toyota left 2116 San Fernando, Bedford, Texas. Surveillance was maintained on the vehicle until it arrived at the Waldemar Apartments, 4812 Waldemar Street, Haltom City, Texas, at approximately 3:05 pm. Affiant observed **Berthelot** enter apartment #110. Investigators had previously identified this address as the residence of Mylinda Henderson. At approximately 4:05 pm, Affiant observed Berthelot and Henderson get into the Toyota and drive away. **Berthelot** was the driver. Surveillance was maintained on the black Toyota.

8.      Affiant was in contact with Officer Williams of the Haltom City Police Department, and requested Williams to stop the vehicle if he could establish probably cause. As Officer Williams, in his marked patrol unit, was following the black Toyota it made an abrupt stop

at 2220 Fincher Street, Haltom City, Texas. **Berthelot** was got out of the vehicle and approached a white female at the residence. **Berthelot** talked with the female about 30 seconds and returned to her vehicle. The black Toyota then departed the residence, u-turned in the street, and started driving back to the apartment complex. Officer Williams was able to get behind **Berthelot** again. Officer Williams observed **Berthelot** fail to signal properly and initiated a traffic stop on the black Toyota at approximately 4:10 pm. Officer Williams ultimately arrested **Berthelot** for the traffic violation. A search was conducted of the vehicle incident to her arrest. Officer Williams located three plastic baggies containing a white crystal substance within the vehicle. During a search of **Berthelot's** wallet 5 counterfeit $20.00 bills were also found and seized. Affiant attempted to interview Berthelot following her arrest. She denied any knowledge of the drugs and invoked her right to counsel. Affiant immediately terminated his conversation with Berthelot.

9.      The contents of the three baggies were analyzed at the DEA-SCL which found that one baggie contained 50.0 grams of 95.2% pure methamphetamine hydrochloride, that the second baggie contained 0.27 grams of 98.5% pure methamphetamine hydrochloride, and that the third baggie contained contained 3.8 grams of 95.7% pure methamphetamine hydrochloride.

> ### *Arrest of Ferrell Coleman and seizure of 12.04 grams of methamphetamine on March 18, 2009*

10.      On 03-18-2009, members of the FWRO were conducting surveillance at 2116 San Fernando, Bedford, Texas the residence of **Gerry**. A 1994 Harley Davidson motorcycle, TXLP# 3RJ737 was parked there. Investigators had previously identified this motorcycle as being registered to **Ferrell Coleman**.

11.      Affiant made contact with the Euless Police department and requested a traffic stop if Euless Police Officers could establish probably cause for a stop. At approximately 8:35 p.m., the 1994 Harley Davidson motorcycle left 2116 San Fernando, Bedford, Texas. Surveillance was maintained on the vehicle until it entered Euless, Texas.

12.      At approximately 8:50 p.m. Officer Fimbres with the Euless Police Department observed numerous traffic violations and performed a traffic stop on the motorcycle. Officer Fimbres ultimately arrested **Coleman** for the traffic violations. Upon a search of the motorcycle and **Coleman**, incident to arrest, Officer Fimbres located two clear plastic baggies each containing a white crystal substance. A cellular telephone (469-744-7737) carried by **Coleman** was also seized.[2] No attempt was made to interview **Coleman** because

---

[2] The subscriber record for this cellular telephone reflects **Ferrell W. Coleman** as the subscriber.

he is on state parole and, as previously noted (¶2, fn.1) **Gerry** appears to have an inappropriate relationship with his state parole officer.

13.   The suspected methamphetamine was analyzed at Integrated Forensics Laboratory and was found to be 12.04 grams of a mixture and substance containing methamphetamine.

### *Arrest of Lydia Faye Cedillo and Gabriel Hernandez and seizure of methamphet- amine on March 23, 2009*

14.   On 03-23-2009, members of the FWRO were conducting surveillance at 2116 San Fernando, Bedford, Texas the residence of **Gerry**. At approximately 3:07 P.M. S/A Robinson observed **John Holt** exit the residence, enter the 1993 black Ford Mustang, and depart. Mobile surveillance was maintained on the vehicle until it arrived at the Toadie's Bar and Grill located less than a mile away from **Gerry** residence at approximately 3:12 p.m. S/A Robinson saw **Holt** meet in the parking lot with a Hispanic male, later fully identified as **Gabriel Hernandez** and a white female, later fully identified as **Lydia Faye Cedillo**.

15.   At approximately 3:50 P.M., the three subjects exited the restaurant. S/A Robinson observed **Hernandez** and **Cedillo** re-position their vehicle (a Ford Taurus) and re-park it next to **Holt** and the black Mustang. **Cedillo** got out of the Taurus with a white bag and what appeared to be books in her hand. **Holt** got out of his vehicle and raised the hood as **Cedillo** was approaching his vehicle. **Cedillo** placed the items she carried into the passenger side of the **Holt's** vehicle and then walked to the front of the Mustang where she briefly spoke with **Holt**. **Holt** then entered the driver's side of the Mustang while **Cedillo** entered the vehicle's passenger seat. A few minutes later **Cedillo** got out of **Holt's** car and got back into the Taurus. **Holt** drove out of the parking lot as did **Cedillo** and **Hernandez**. Surveillance was maintained on the Taurus.

16.   During the surveillance officers and agents observed the Taurus commit several traffic violations. At the request of the investigating agents Arlington Police Department officers made a traffic stop on the vehicle for failure to indicate lane change and for a suspected window tint violation. **Hernandez** was identified as the driver and **Cedillo** was identified as the passenger.

17.   The Arlington officers conducted a warrant check on **Hernandez** and **Cedillo**. Both had outstanding traffic warrants for their arrest, which were confirmed. **Hernandez** and **Cedillo** were then arrested without incident. A search of the vehicle revealed a small baggie containing a brown crystal like substance hidden inside a false compartment in a two liter Dr. Pepper bottle. A presumptive test was conducted on the substance with the results positive

for methamphetamine. The gross weight (including packaging) of the suspected methamphetamine was approximately 8.1 gross grams.

### *Illegal investment activities of Thomas Gerry and Andy Anderson on June 5, 2009*

18.     On June 5, 2009, there were approximately 12 phone calls and text messages to and from **Thomas Gerry** relating to **Andy Anderson** needing $300,000 immediately to keep the IRS from taking the building where his business - "Hardbody's" - is located.     The conversations and text messages were between **Thomas Gerry, Andy Anderson, Brittany Krambeck, David Krambeck, Steve Adams,** and **Wade Smith. Anderson** asks **Gerry** how much currency **Gerry** has. **Gerry** advises **Anderson** that he had between $30,000 and $50,000 at his residence; however, he has another $130,000.00 to $150,000.00 down the street. **Anderson** says he needs the money to purchase the Hardbody's property. **Gerry** tells **Anderson** that this will put him short and he will not have any "reload money" (Investigators believe that this means money to purchase additional methamphetamine.) **Anderson** states that **Gerry** knows he is good for the money. **Gerry** then tells **Anderson** that he will get back with him.

19.     **Gerry** then calls **Brittany Krambeck** and tells her to come to his residence. Surveillance units observe **Brittany Krambeck** arrive at **Gerry's** residence. **Gerry** then calls (817) 734 4338, subscribed to by **Robin Krambeck,** a male answers the phone, believed to be **David Krambeck,** who **Gerry** refers to as "Dave." **Gerry** tells "Dave" that **Brittany** will be down there in a minute to clean off the shelf, referring to getting currency. "Dave" states okay. **Gerry** then tells **David Krambeck** that "the safe is yours for keepin'." Surveillance units then observe **Brittany Krambeck** leave 2116 San Fernando, Bedford, Texas and drive down the street to 2136 San Fernando, Bedford, Texas, (the residence of Robin and David Krambeck)[3] back her Ford Explorer into the drive and go inside the residence. **Brittany Krambeck** was in the residence for approximately 10 minutes exited the residence and returned to **Gerry's** residence. **Gerry** then called **Anderson** and told **Anderson** that he had $160,000.00, then asked if that would be enough. **Anderson** told **Gerry** to take the money to **Anderson's** residence. A few minutes later **Gerry** and **Brittany**

---

[3] Surveillance units have observed David Krambeck at the residence. Tarrant County Appraisal District records also reflect the owner of the residence as David L. and Robin R. Krambeck. Texas Department of Public Safety records indicate that the 2003 Kia parked in the driveway of the residence registered to David and Robin Krambeck at 2116 San Fernando, Bedford, Texas. The 1999 Kia parked in the driveway registers to Robin and David Krambeck at 2136 San Fernando, Bedford, Texas.

**Krambeck** left the residence in the Ford Explorer.  Surveillance was maintained until they arrived at 849 Oak Crest, Fort Worth, Texas , the residence of **Andy Anderson.**[4]

### *June 10-11, 2009 - Gerry purchases methamphetamine and $60,800 is seized*

20.     On June 10, 2009, at approximately 10:55 p.m., a telephone call between **Thomas Gerry** and **Wade Smith** was intercepted.  During the course of the conversation, the monitors recorded the following exchange:

| | |
|---|---|
| SMITH: | . . . .UH. . . TONY CALLED ME. |
| GERRY: | WHO? |
| SMITH: | TONY, MY FRIEND. |
| GERRY: | OH YEAH. |
| SMITH: | BRITTANY GONNA COME OVER AND SEE YOU FOR A MINUTE. |
| GERRY: | SHE WHAT?  COMING OVER TO SEE ME? |
| SMITH: | YEAH, SHE UH...NEEDA...CHECK SOMETHING OUT. |
| GERRY: | OKAY WELL TRY GET...GET OVER HERE MAN CAUSE I WAS ON THE WAY OUT WITH HER. SOMEONE ELSE JUST CAME IN ... |
| [VOICES OVERLAP] | |
| SMITH: | DON'T LEAVE...IT WILL BE WELL WORTH YOUR TIME.  AND THEN UH... I TALKED TO U/I LET YOU KNOW WHAT 'S UP. |
| GERRY: | OKAY, WHEN?  WHAT YOU TALKING ABOUT? |
| SMITH: | RIGHT NOW SHE'S GONNA LEAVE RIGHT THIS MINUTE. |
| GERRY: | OH OKAY.  OKAY BYE. |

21.     Shortly after this interception, surveillance observed a white Cadillac Escalade [TxLP# RKW-157] parked in the driveway of the joint residence of **Smith** and **Krambeck** (5516 Emerald Court, North Richland Hills, Tx.).

22.     Starting on June 10, 2009, at approximately 11:55 p.m. and ending on June 11, 2009, at approximately 3:27 a.m., a series of text messages were intercepted between **Thomas L. Gerry, Andy Anderson, and Wade Smith.**  The text messages were as follows:

| DIRECTION: | DATE: | TIME: | TEXT MESSAGE: | AFFIANT'S INTERPRETATION: |
|---|---|---|---|---|
| Gerry to Anderson | 06-10-2009 | 11:55:02 PM | A., I'm gonna need my $.. Dealing on some stocks spose to double 2 wks. Hope ur home | Gerry is advising Anderson that he needs his cash to buy more methamphetamine. "Stocks" is believed to be a code for drugs. |
| Anderson to Gerry | 06-10-2009 | 11:55:46 PM | Come by | Anderson advising Gerry to come by his residence. |

---

[4]     This is the primary residence of Herbert "Andy" Anderson.  Anderson has been observed at this residence.  Tarrant County Appraisal District records also reflect the owner of the residence as Herbert P Anderson.  During this investigation numerous financial documents have been reviewed.  This address has been shown as Anderson's home address on many of these documents.

| DIRECTION: | DATE: | TIME: | TEXT MESSAGE: | AFFIANT'S INTERPRETATION: |
|---|---|---|---|---|
| Anderson to Gerry | 06-10-2009 | 11:56:24 PM | Need the hole box | Anderson is asking Gerry if Gerry needs the entire box of cash. |
| Gerry to Anderson | 06-10-2009 | 11:57:54 PM | 20,000 B plenty | Gerry then advises that he will only need $20,000. |
| Gerry to Anderson | 06-10-2009 | 11:58:20 PM | On the way. | Gerry is advising Anderson that he is on his way. |
| Anderson to Gerry | 06-10-2009 | 11:58:24 PM | Come by | Anderson advises "come by" |
| Gerry to Smith | 06-11-2009 | 12:16 AM | I pay $39.00 per gram. 39,000 a kilo. 2lb=886 grm.=34,550 | Gerry is advising Smith that he pays $39 a gram of meth-amphetamine, $39,000 a kilo-gram of methamphetamine and $34,550 for two pounds of methamphetamine. |
| Smith to Gerry | 06-11-2009 | 12:23 AM | 39000 for 2000g minus 20 sumth gs out n sanples | Smith advises that $39,000 is the price for two kilograms of methamphetamine minus 20 grams for the methamph-etamine sample. |
| Gerry to Anderson | 06-11-2009 | 12:34 AM | Make it 30,000 | Gerry advises Anderson that he will need $30,000 in cash. |
| Anderson to Gerry | 06-11-2009 | 12:34 AM | Ok when | Anderson asks Gerry when. |
| Gerry to Anderson | 06-11-2009 | 12:36 AM | On 820 south & Trinity. | Gerry is advising Anderson that he is close to his house. |
| Anderson to Gerry | 06-11-2009 | 12:37 AM | Cool buzz me when u r here | Anderson stating call me when you are here. |
| Gerry to Anderson | 06-11-2009 | 12:46 AM | Shit, forgot 12 g at me casa. Its now 40 – Sorry. Need to have it on my own ground. Might bor-row vehicle too. | Gerry is advising Anderson that he left $12,000 at his residence and will now need $40,000 in cash. |
| Anderson to Gerry | 06-11-2009 | 12:48 AM | K | Anderson advises OK. |
| Gerry to Anderson | 06-11-2009 | 12:48 AM | Here. | Gerry advising Anderson that he is at the residence. |
| Smith to Gerry | 06-11-2009 | 3:27 AM | Yes im hapy things wrked out wel 2nite | Smith advises Gerry that he is happy that the purchase of methamphetamine went well. |

23.     On June 11, 2009, at approximately 5:31 a.m., the following text message between **Brittany Krambeck and Thomas L. Gerry** was intercepted:

| DIRECTION: | DATE: | TIME: | TEXT MESSAGE: | AFFIANT'S INTERPRETATION: |
|---|---|---|---|---|
| Krambeck) to Gerry | 06-11-2009 | 5:31 AM | I figure u pd. 546 oz so. Im into u for 3050 can I get these 2 for 700 each to recover frm the bad. | Brittany Krambeck is stating that she believes Gerry paid $546 for an ounce of meth-amphetamine. Krambeck is |

| DIRECTION: | DATE: | TIME: | TEXT MESSAGE: | AFFIANT'S INTERPRETATION: |
|---|---|---|---|---|
| | | | | telling Gerry she currently owes $3050 for methamphetamine and is asking if she can pay $700 for 2 ounces to recoup some of her losses. |

24.     Starting on June 11, 2009, at approximately 2:40 p.m. and ending on June 11, 2009, at approximately 7:39 p.m., a series of text messages between **Thomas L. Gerry, Andy Anderson, and Wade Smith** were intercepted.  The following are the text messages.

| DIRECTION: | DATE: | TIME: | TEXT MESSAGE: | AFFIANT'S INTERPRETATION: |
|---|---|---|---|---|
| Anderson to Gerry | 06-11-2009 | 2:40 PM | U home | Anderson is asking Gerry if he is at home. |
| Gerry to Anderson | 06-11-2009 | 2:50 PM | Yes, got Tango Blast either to be here- or I go to them…Will be decided PDQ. Alls well, Xcurtion sitting where I drove 2 frm su case. My house. | Gerry is advising Anderson that he is at home.  Gerry is further advising Anderson that he has a potential methamphetamine deal with Hispanics [Tango Blast is a Hispanic gang in Texas]  and that the deal will ether take place at his residence or at there location.  Gerry is further advising that the deal location should be decided very quickly.  Gerry is advising Anderson that, Anderson's Excursion is at Gerry's residence. |
| Gerry to Anderson | 06-11-2009 | 5:39 PM | A., i'm gonna need my $.. Dealing on some stocks spose to double 2 wks. Hope ur home. | Gerry is advising Anderson that he is going to need more cash to purchase methamphetamine.  Gerry is stating that he can double his money in two weeks.  Gerry is asking if Anderson is home. |
| Anderson to Gerry | 06-11-2009 | 5:44 PM | I'm home | Anderson advising Gerry that he is home. |
| Gerry to Anderson | 06-11-2009 | 6:12 PM | Britt on her way. All the box & 10 more if handy | Gerry is advising that Brittany Krambeck is on her way to pick up a box of cash and $10,000 more if it is available. |
| Smith to Gerry | 06-11-2009 | 6:56 PM | Might as wel get it al ! coming aftr my baby 2! | Smith is advising Gerry to purchase all the methamphetamine he can.  Smith is also |

| DIRECTION: | DATE: | TIME: | TEXT MESSAGE: | AFFIANT'S INTERPRETATION: |
|---|---|---|---|---|
| | | | | advising that he is coming after Brittany Krambeck. |
| Anderson to Gerry | 06-11-2009 | 7:39 PM | Gonna need how much frm me...when? | Anderson is asking Gerry how much cash Gerry will need from Anderson. |

25.    Affiant believes that the above interceptions, combined with the subsequent surveillance and investigation, show that **Smith** contacted **Gerry** because **Smith** had found a possible source for methamphetamine and sent **Krambeck** to **Gerry's** to show him a twenty gram sample of the methamphetamine. Affiant believes that the sample was provided to **Smith** and **Krambeck** by the **Cruzes** because their vehicle was observed parked at the **Smith-Krambeck** residence shortly after **Smith's** call to **Gerry** on June 10, 2009 and **Krambeck** drove the Cruzes from Gerry's residence to that same vehicle on the following evening. **Smith** is a distributor for **Gerry** and does not have the money to make a deal by himself, but wants to stay in the good graces of **Gerry**. **Gerry** was apparently pleased with the quality of the drugs and the price. Affiant believes that **Smith** introduced **Gerry** to the **Cruzes** once **Gerry** was satisfied with the quality. When **Gerry** tells **Smith** that he pays $39,000 per kilogram, **Smith** responds that the price is $39,000 for two kilograms (less the sample). **Gerry** had told Anderson earlier that **Gerry** only needed $20,000. But after receiving **Smith's** message **Gerry** tells **Anderson** that he needs $30,000, and shortly thereafter tells **Anderson** that he needs $40,000 because **Gerry** had forgotten to bring with him $12,000 that **Gerry** had at his house. Affiant believes that there were two transactions between **Gerry** and the **Cruzes**. One in the early morning hours of June 11 as evidenced by **Smith's** message at 3:27 a.m.; and a subsequent purchase by **Gerry** that evening, as evidenced by the **Cruzes** departing **Gerry's** house at 8:26 p.m. carrying $60,800 in currency.

26.    On June 11, 2009 at 6:38 p.m. surveillance observed **Brittany Krambeck's** blue Ford Explorer [TX LP# KPG894] parked at **Anderson's** residence located at 849 Oak Crest, Fort Worth, Texas. At 6:39 p.m., **Krambeck's** vehicle departed **Anderson's** residence. After a short time the vehicle conducted several "heat runs" and surveillance was lost on the vehicle. At 7:17 p.m., other surveillance agents observed **Brittany Krambeck**, driving her blue Ford Explorer, arrive at **Gerry's** residence. **Krambeck** carried a 2' by 2' box into the residence.

27.    At approximately 8:26 p.m., **Krambeck, Gerry**, and two Hispanic males (later identified as **Rene Gloria Cruz** and **Juan Gloria Cruz**) came out of **Gerry's** residence. **Krambeck** and the two Hispanic males depart in **Krambeck's** vehicle and are followed to a nearby shopping center parking lot. There, the 2 Hispanic males get out of **Krambeck's** vehicle and get into a white Cadillac Escalade [TxLP# RKW-157] occupied by 2 other

Hispanic males (later identified as **Rafael Fuentes** and **Eduardo Diaz**). The Escalade then follows **Krambeck** to a Days Inn motel near the intersection of Hwy 360 and Trinity Blvd.

28.    There, the 4 Hispanic males enter the motel lobby. **Krambeck** then drives away. A few minutes later, the 4 Hispanic males exit the motel lobby, get back into the Escalade, and begin driving south bound on Hwy 360.

29.    At the request of the Investigators, a traffic stop is conducted on the Escalade by a uniformed Arlington police officer after the officer observed a moving violation. During the traffic stop, one of the passengers (**Rene Gloria Cruz**) is found to have outstanding arrest warrants and is arrested. The Arlington officer identified **Juan Gloria Cruz** as the driver, **Rafael Fuentes** as the owner of the vehicle, **Rene Gloria Cruz** and **Eduardo Diaz** as passengers. The Arlington officer obtained a consent to search from the occupants of the vehicle. A shotgun was observed by the Arlington officer in the back seat of the Escalade. The Escalade was searched and $60,800 was found in a small plastic shopping bag inside the vehicle. A handgun was also found inside the vehicle. The shotgun, currency, and handgun were all seized at the scene.

### June 22-23, 2009 - Zana Sessions (Gerry's parole officer) obtains drugs from Gerry

30.    Starting on June 22, 2009, and ending on June 23, 2009, a series of text messages were intercepted between **Thomas L. Gerry** and **Zana Rochelle Danko Sessions**. The text messages were initiated by **Sessions** from telephone number 682-564-4919, subscribed to and used by **Sessions**, to **Gerry** at 817-899-1225. The intercepted text messages were as follows:

| Direction | Date | Time | Text | Affiant's Interpretation |
|---|---|---|---|---|
| Sessions to Gerry | 6/22/2009 | 9:58 AM | Good Morning. Hope you had a good fathers day yesterday. Im put of those things now. Do you still have some you can spare? | Sessions is asking how Gerry is doing. Sessions is stating that she is out of prescription pain medication and is asking Gerry if Gerry has any to give to her. |
| Sessions to Gerry | 6/22/2009 | 4:05 PM | Hey. Whats up! Is Everything ok? | Sessions asking Gerry if everything is OK. |
| Sessions to Gerry | 6/22/2009 | 4:35 PM | Hey. Whats up! Is Everything ok? | Sessions asking Gerry if everything is OK. |
| Sessions to Gerry | 6/22/2009 | 6:59 PM | Starting to worry a little. Are you ok? | Sessions stating that Sessions is worrying, asking Gerry if everything is OK. |
| Gerry to Sessions | 6/22/2009 | 8:25 PM | Hi Zana, just now getting around to my phone. Yes I do still have those & U can come by when U like. Tell me when | Gerry telling Sessions that Gerry is just getting up and that Gerry still has the pills, Advises that Sessions could come by if she would like to. |

| Direction | Date | Time | Text | Affiant's Interpretation |
|---|---|---|---|---|
| Sessions to Gerry | 6/22/2009 | 8:30 PM | Ok. Glad ur ok. Can I come in the morning? | Sessions responds that she is happy that he is OK, and asks if she can come by in the morning. |
| Gerry to Sessions | 6/22/2009 | 8:37 PM | 2nite if U like. Call in a.m. 2 make sure I'm home if U come then. | Gerry is advising Sessions that she can come by tonight or tomorrow. |
| Sessions to Gerry | 6/22/2009 | 8:39 PM | In the am would be better 4 me. What time in the am is good 4 you? | Sessions advising that tomorrow would be better. |
| Gerry to Sessions | 6/22/2009 | 8:43 PM | I don't kno where or when I'll go… Or if. Y I say call. | Gerry advising Sessions to call before she comes. |
| Sessions to Gerry | 6/22/2009 | 8:45 PM | Ok. I will call. | Sessions responding to Gerry's request to call before she comes. |
| Gerry to Sessions | 6/22/2009 | 8:46 PM | c U then | Gerry advising Sessions that that is fine. |
| Sessions to Gerry | 6/22/2009 | 8:47 PM | OK | Sessions replying OK. |
| Gerry to Sessions | 6/23/2009 | 3:34 AM | Can we make it 9:00 – 10:00. I need to take Dexter to Vet 10:30. | Gerry is advising Sessions that she needs to arrive between 9:00 am – 10:00 am, because he has to take his dog to the vet. |
| Sessions to Gerry | 6/23/2009 | 3:35 AM | OK | Sessions stating that that is OK. |
| Sessions to Gerry | 6/23/2009 | 7:24 AM | Do you still want me to come at 9:00? | Sessions asking Gerry if Gerry still wants Sessions to come at 9:00 am. |
| Gerry to Sessions | 6/23/2009 | 7:47 AM | 9:30 – 10:00 is good. OK for U? | Gerry is stating that 9:30 am to 10:00 am is good for him if it is good for Sessions. |
| Sessions to Gerry | 6/23/2009 | 7:48 AM | Yes. See you then. | Sessions is stating Yes, She will see Gerry then. |
| Gerry to Sessions | 6/23/2009 | 7:49 AM | K | Gerry is saying OK. |
| Sessions to Gerry | 6/23/2009 | 9:45 AM | ALMOST TO UR HOUSE FIGHTING TRAFFIC GHGJUB | Sessions is letting Gerry know that she is almost to his residence. |

31.   Surveillance was established at approximately 9:00 a.m. on June 23, 2009 at **Gerry's** residence.  Surveillance units were able to observe **Sessions** arrive at **Gerry's** residence located at 2116 San Fernando, Bedford, Texas.  Surveillance units observed **Sessions** enter **Gerry's** residence at approximately 10:00 a.m., stay a short time, and come out of the residence with **Gerry**.  Surveillance units noted that **Gerry** was wearing a t-shirt and what appeared to be boxer short underpants as **Gerry** and **Sessions** exited the residence.  Surveillance was maintained on **Sessions** from the time she left **Gerry's** residence, until she arrived at 5558 Northfield Drive, Fort Worth, Texas, a previously identified residence of **Sessions**.   Based upon the intercepted communications and the observations of the

surveillance officers, Affiant believes that **Sessions** obtained prescription pain medication (hydrocodone) from **Gerry**.[5]

> ### June 30, 2009: Gerry and Wade Smith discussing the Arrest of Donald Jay Davis on June 29, 2009.

32.    On June 29, 2009, members of the DEA established surveillance at 3714 Gazebo Court Apt #1824, in Fort Worth, Texas. The apartment is a location that the **Thomas Gerry DTO** uses to store illegal narcotics.[6] Surveillance units observed a white 2001 Chevrolet truck bearing Texas plate 76T-TM7, registered to **Steven Adams**, 715 Vine Street, Euless, Texas, parked outside of this apartment.

33.    At approximately 2:16 p.m., surveillance units observed a blue 2000 Dodge truck bearing Texas plate 83T-LY9, registered to **Donald Jay Davis** at 2712 Twinflower, Fort Worth, Texas arrive at the apartment. Surveillance observed **Davis** exit the truck and enter the apartment. Some five minutes later **Davis** and **Adams** exit the apartment. Surveillance observed **Davis** walk over to the drivers side of the 2000 blue Dodge truck, and moving some items around inside the bed of the truck. **Davis** then entered the truck and departed the location. Approximately 1 minute later **Adams** entered his white Chevrolet truck and departed the location. Surveillance was maintained on **Davis** until a marked Fort Worth Police unit initiated a traffic stop on **Davis** at approximately 2:38 p.m., for failure to wear a seat belt.

34.    DEA TFO Butch Daniels, who is a K9 handler, arrived at the location. TFO Daniels then had his K-9 dog "Buddy" check **Davis** vehicle for the presence of narcotics. K-9

---

[5] Affiant' belief is also based, in part, upon the statement made by **SOI#1** during the course of his October 2008 interviews that he had, while working as a distributor for **Gerry**, delivered pain prescription medication(hydrocodone) to **Gerry's** parole officer; and upon **Gerry's** subsequent text message to **Wade Smith** on 6/30/2009 at 8:57 a.m. (¶ 35, infra).

[6] Affiant notes that at various times within the past two months, members of the DTO, including **Thomas Gerry, Brittany Krambeck, John Holt, Wade Smith, Steven Adams, Roger Flittie, Donald Jay Davis, Robin Berthelot, Rebekka Baker, Juan Cruz,** and **Roger Flittie** have been observeded going to or coming from his apartment. In intercepted wire and electronic communications members of the DTO refer to this apartment as "the office." Affiant also notes that a Fort Worth Police Department report made on September 24, 2008 reflects that **Rebekka Rhea Baker** reported that she was the leaseholder of the apartment and that the apartment had been burglarized that day. This location was previously identified on 02-26-2009 when members of the Fort Worth RO followed **Donald Jay Davis** and other workers of Hammertime Custom Remodeling to this location and observed them remove the personal belongings of **Rebekka Rhea Baker** from this apartment and transfer them to the Oakmont Apartments located on El Camino Real, Hurst, Texas

"Buddy" gave a positive alert for the presence of drugs in the bed of the pick up near the tool box. TFO Daniels then immediately located two small clear baggies containing a rocklike substance. The seized suspected drugs were analyzed at the DEA-SCL and was found to be 55.2 grams of 98.4% pure methamphetamine hydrochloride.

35.     The following morning, June 30, 2009, several text messages were placed between **Gerry** and **Wade Smith**. Those text messages were as follows:

| Direction | Time | Text message | Affiant's Interpretation |
|---|---|---|---|
| Smith to Gerry | 8:26 AM | Jay was pulled over…Found 2oz let him walk | Smith is advising Gerry that Donald Jay Davis was pulled over with two ounces of methamphetamine and was let go. |
| Gerry to Smith | 8:45 AM | Walked out of jail last time – Had something like a 14 lb that time! On parole too ?!? Cops sure R nice. It is still illegal to posses? | Gerry is advising Smith that the last time Davis was arrested Davis had about 1/4 pound of methamphetamine. Gerry is stating to Smith that Davis is on parole. Gerry referring to "Cops sure R nice" is believed to mean that Gerry believes that Davis is possible cooperating with police. Gerry is then asking Smith if possessing methamphetamine is even against the law anymore. |
| Smith to Gerry | 8:47 AM | 4 sum of us it's a life sentence lets me n u not test the water bro | Smith is advising Gerry that for them it would be a life sentence in jail if they were caught with methamphetamine. |
| Gerry to Smith | 8:57 AM | I did 15yrs for poss. Did U get my medicine for me? Hurtin, p.o. coming by this a.m. | Gerry is advising Smith that he did 15 years in prison for possession of methamphetamine. Gerry is then asking Smith if Smith was able to get his prescription medication  Then Gerry is advising Smith that his "Hurtin" parole officer (Sessions) is coming by Gerry's residence this morning. |

*Gerry and Krambeck texting in reference to Methamphetamine availability on July 19, 2009.*

36.     On July 19, 2009, text messages were intercepted between **Gerry** and **Brittany Krambeck**. The text messages were as follows:

| DIRECTION: | TIME: | TEXT MESSAGE: | AFFIANT'S INTERPRETATION: |
|---|---|---|---|
| Krambeck to Gerry | 2:07 PM | Is there any work? I'm Dry and need to up, duk says there's nada at apt | Krambeck is asking Gerry if Gerry has any methamphetamine. Krambeck is advising she is out of methamphetamine, and that Steve Adams says there is no methamphetamine at the apartment. |

| DIRECTION: | TIME: | TEXT MESSAGE: | AFFIANT'S INTERPRETATION: |
|---|---|---|---|
| Gerry to Krambeck | 2:41 PM | He need to bring me some money | Gerry is telling Krambeck that Steve Adams needs to bring Gerry the drug proceeds |
| Krambeck to Gerry | 3:08 PM | What would he need to bring u money for? | Krambeck is asking Gerry why Adams would need to bring Gerry money |

***Text messages and Phone call between Thomas Gerry and Brittany Krambeck regarding testing Methamphetamine on July 21, 2009***

37.     On July 21, 2009, text messages were intercepted between Thomas Gerry and Brittany Krambeck.  The text messages started at approximately 5:31 p.m.  The text messages were as follows:

| DIRECTION | TIME | TEXT MESSAGE | AFFIANT'S INTERPRETATION: |
|---|---|---|---|
| Gerry to Krambeck | 5:31 PM | I have a sample of new craftsman work. Needs to be checked. Any ideas for that? Now is the time if possible. | Gerry is tell Krambeck that he has a sample of the new methamphetamine and needs to have it tested |
| Krambeck to Gerry | 5:32 PM | Ask duk? | Krambeck responds ask Steve Adams. |
| Krambeck to Gerry | 5:54 PM | Or bekka will come try it? Maybe? | Then replies that Rebekka Baker will try the methamphetamine. |
| Gerry to Krambeck | 5:55 PM | I need someone to check this new out, B4 I spend the big $ | Gerry is telling Krambeck that he needs to get the quality of the methamphetamine checked out before Gerry spends a lot of money. |
| Gerry to Krambeck | 5:58 PM | Bekka? Come on now. | Gerry is telling Krambeck to come now. |
| Krambeck to Gerry | 6:01 PM | Or I can pick up a wrench and take it to someone who's a mechanic | Krambeck then tells Gerry that she can pick up some of the methamphetamine and take it to be tested. |
| Krambeck to Gerry | 6:02 PM | Me or her? Or both? | Krambeck then is asking if Gerry wants her, or Rebekka, or both of them, to test the methamphetamine. |

| DIRECTION | TIME | TEXT MESSAGE | AFFIANT'S INTERPRETATION: |
|---|---|---|---|
| Gerry to Krambeck | 6:03 PM | Ok, just need an estimate. | Gerry is asking when they will be there. |
| Gerry to Krambeck | 6:24 PM | What ever, just want no more costly mistakes. TONY via Wade cleared it as the 'the shit' - 76,000 $ down the drain. | Gerry is stating that he does not care who tests the methamphetamine, however; he does not want any mistakes. Gerry is referring to the bad methamphetamine he spent $76,000 dollars on from Juan and Rene Cruz. |
| Krambeck to Gerry | 6:26 PM | Ill be by in 15 but can't stay. Pick up n go. | Krambeck states that she will be there in 15 minutes to pick up a sample. |
| Krambeck to Gerry | 7:08 PM | I'm here | Krambeck is advising Gerry that she has arrived at Gerry's house. |

38.     On July 21, 2009, at approximately 8:58 p.m., a phone call was intercepted between **Thomas Gerry** and **Brittany Krambeck** The following is a synopsis of the phone call.

> When the call is started you can hear **Krambeck** and **Baker** talking in the background.  **Gerry** answers the phone and **Krambeck** tells **Gerry** that the "tools are splendid".  **Baker,** in the background, says its "Fabulous." **Krambeck** then tells **Gerry** that **Bekka** she is going to have a heart attack; that it is real real good and that she can't focus.  **Krambeck** then tells **Gerry** that she just ran around the whole store of Sears.  **Gerry** responds "O.K."  **Gerry** then asks **Krambeck** if this seems to be the right thing, "The tool we need." **Krambeck** responds "Yeah, as long as all the monkey wrenches look just like that."

Affiant believes that this phone call reflects that **Krambeck** and **Baker** tested the methamphetamine and both approved of the quality.

> ***Text message conversations between Gerry and Perryman regarding the pick-up of methamphetamine and the results of the traffic stop and arrest of Perryman on July 24, 2009.***

39.     Starting on July 24, 2009 a series of text messages were intercepted between **Thomas L. Gerry** and **Brian Perryman**.  The text messages were as follows:

| DIRECTION | TIME | TEXT MESSAGE | AFFIANT'S INTERPRETATION |
|---|---|---|---|
| Gerry to Perryman | 5:29 PM | 2 moro is good. Got some GOOD product now. | Gerry is advising Perryman that Gerry has some good methamphetamine. |
| Perryman to Gerry | 5:30 PM | Want some tonight | Perryman is advising Gerry that he wants some of the methamphetamine tonight. |
| Perryman to Gerry | 5:42 PM | Want some tonight | Perry is again advising Gerry that he wants some of the methamphetamine to-night. |
| Gerry to Perryman | 5:47 PM | Bring $ | Gerry is advising Perryman to bring US Currency. |
| Perryman to Gerry | 5:48 PM | K | Perryman is advising OK. |
| Gerry to Perryman | 5:48 PM | Bring $ | Gerry is again advising Perryman to bring US Currency. |
| Perryman to Gerry | 5:48 PM | K | Perryman is advising OK. |
| Perryman to Gerry | 5:51 PM | To duck or what? | Perryman is asking Gerry if Perryman needs to take the money to Steve Adams or who. |
| Gerry to Perryman | 5:51 PM | Will call later | Gerry is advising Perryman that he will call him later. |
| Perryman to Gerry | 5:52 PM | When later? | Perryman is asking Gerry when later. |
| Gerry to Perryman | 5:53 PM | Yes | Gerry is responding Yes. |
| Perryman to Gerry | 5:55 PM | Yes what? Office or house | Perryman is asking if Gerry wants him to come to the apartment at Highway 360 and Trinity or to Gerry's residence. |
| Gerry to Perryman | 5:59 PM | I'm up to my nose- get with ya A.S.A.P. | Gerry tells Perryman he is busy and will get back to Perryman as soon as possible. |
| Perryman to Gerry | 9:29 PM | I was trying to get the plans to my guys who have gotten the bad set the last several sets of plans before they got plans else where | Perryman is telling Gerry that he was try-ing to get good methamphetamine to his customers who had received bad metham-phetamine from Perryman in the past. |
| Gerry to Perryman | 9:37 PM | Things r open. Come C me | Gerry is advising that Perryman can come pickup the methamphetamine now. |

| DIRECTION | TIME | TEXT MESSAGE | AFFIANT'S INTERPRETATION |
|---|---|---|---|
| Perryman to Gerry | 9:38 PM | Where? | Perryman is asking Gerry where to come pickup the methamphetamine. |
| Gerry to Perryman | 9:39 PM | I live | Gerry is advising Perryman to come to Gerry's residence. |
| Gerry to Perryman | 10:25 PM | Things r open. Come C me | Gerry is advising Perryman again to come pickup the methamphetamine. |
| Perryman to Gerry | 10:28 PM | Trying to get back in touch with the crew now otherwise might as well wait til tomarrow waiting 4 call back and fixing tv | Perryman is advising Gerry that he is waiting for a call back from his customers. Perryman is saying that if he does not get a call back he might as well wait till tomorrow to pick up the methamphetamine. |
| Gerry to Perryman | 10:30 PM | Ok.. Had much biz going on. But I got ya. | Gerry is advising that he had a lot of business going on but that he has methamphetamine for Perryman. |
| Perryman to Gerry | 10:35 PM | Just called me. Hate to but will need to eat and run to save a few miles | Perryman is advising that he received a call back from his customers. Perryman advising Gerry that he is going to eat then be on the way. |
| Gerry to Perryman | 10:36 PM | Get a move on it then boy. | Gerry is advising Perryman to hurry up. |

40.    On July 24, 2009, at approximately 11:38 p.m., surveillance units at 2116 San Fernando Street, Bedford, Texas observed a black motorcycle arrive driven by **Perryman**. Surveillance was maintained on the residence until **Perryman** exited the residence at approximately 3:15 a.m. on July 25, 2009. Chuck Weisman with the Tarrant County Sheriffs Department conducted a traffic stop on **Perryman** at Loop 820 north and Beach Street in Fort Worth, Texas. During the traffic stop of **Perryman**, Deputy Weisman ask **Perryman** to empty his pockets after Deputy Weisman conducted a pat down of **Perryman**. While **Perryman** was emptying his pockets, **Perryman** threw, on the side of the road, a plastic baggie containing approximately 1/4 oz. of a substance that field tested positive for methamphetamine. Perryman provided Deputy Wiseman with two address during the traffic stop and ultimate arrest one was 3625 Clubgate Drive, Fort Worth, Texas as his residence address and the other was 4701 North Main, Fort Worth, Texas, as his business address.

### *Arrest of Rebekka Rhea Baker on August 2, 2009*

41.    On August 2, 2009, **Rebekka Rhea Baker** was arrested by the Fort Worth Police Department on outstanding warrants.  **Baker** reported to the arresting officer that her home address was 1503 El Camino Real, #307, Euless, Texas.  At the time of her arrest, **Baker** was found to be in possession of approximately 2 grams of suspected "ice" methamphetamine.

> ### *August 6, 2009  - Thomas Gerry and Roger Flittie texting prior to the delivery of Methamphetamine.*

42.    On August 6, 2009, a series of text messages were intercepted between **Thomas L. Gerry** and **Roger Flittie**.  The intercepted text messages were as follows:

| Direction | Time | Text | Affiant's Interpretation |
|---|---|---|---|
| Flittie to Gerry | 11:20 AM | Friend had a safe trip arrived b 4 sun up and r resting 4 awhile I will wait 2 get mail here get | Flittie is advising Gerry that his customers from South Dakota made it to town.  They are resting and Flittie will get back to Gerry. |
| Gerry to Flittie | 5:30 PM | So when we gonna try & complete ur business ? If one more person comes by I may not be able to fill ur order. | Gerry is asking Flittie when he is going to purchase the methamphetamine? Gerry is advising Flittie that if Gerry has one more customer Gerry may not be able to fill Flittie's order |
| Flittie to Gerry | 5:33 PM | Have $ in hand 4 3 plus an leaving 2 u now 20 min or so | Flittie is advising Gerry that he has his customer's money for three (3) ounces and will met with Gerry in about 20 minutes. |
| Gerry to Flittie | 5:35 PM | Hardly worth their time & effort 4 that little ? | Gerry is telling Flittie that the small amount of methamphetamine is hardly worth the time driving from South Dakota |
| (479) 422-7619 (Flittie) to TT#1 (Gerry) | 5:39 PM | I hear u but we got 2 start some where and this is what we can do right now will b back here next Tue. With a | Flittie is telling Gerry that they have to start somewhere and that all they can get right now is 4 ounces of methamphetamine.  Flittie advises Gerry that next Tuesday they will be back to get a larger order of methamphetamine. |
| (479) 422-7619 (Flittie) | 5:57 PM | I am 2 min. Away from your house | Flittie is advising Gerry that he is 2 minutes away from Gerry. |

43.    On August 6, 2009, surveillance was established at the residence of **Steve Adams** by members of the FWRO, in anticipation of the departure of **Roger Flittie**. At approximately 2:00 pm, S/A Robinson and Affiant observed **Flittie** arrive at the Twin Peaks restaurant located in Bedford, Texas. Affiant observed a burgundy Pontiac Bonneville with South Dakota license plates parked in the parking lot of the restaurant. S/A Robinson and Affiant went into the restaurant to observe who **Flittie** was meeting. **Flittie** and a unknown female met with a white male (later identified as **Kent Daniel Burton**.) The three ate lunch and then exited the restaurant. **Flittie** and the unknown female entered **Flittie's** truck and left the restaurant. **Burton** entered the previously identified vehicle with South Dakota licenses plates and left the area. **Burton** was followed to the America's Best Value Hotel located in Hurst, Texas close to the intersection of Highway 10 and Booth Calloway road.

44.    Surveillance units then established surveillance at 2116 San Fernando, Bedford, Texas, **Gerry's** residence. At approximately 6:11 pm, surveillance observed **Flittie** arrive at **Gerry's** residence, stay until approximately 8:20 pm and depart. Surveillance was maintained on **Flittie** until he arrived at the America's Best Value Hotel located in Hurst, Texas at approximately 8:28 pm. Affiant observed **Flittie** go to the hotel room that had been previously identified as **Kent Daniel Burton's** and **Kelly Joseph Murphy's**. **Flittie** stayed at the hotel until approximately 10:15 pm. Surveillance was maintained on the hotel.

45.    On August 7, 2009, at approximately 5:00 am, TFO Brown observed **Kent Daniel Burton** and **Kelly Joseph Murphy** exit the hotel room and take bags to the previously identified South Dakota vehicle. TFO Brown contacted Deputy Sonny Smith with the Denton County Sheriffs Department and ask his to stand by for a traffic stop if the two went through Denton County. At approximately 5:20 am, the two entered the vehicle and departed the area.

46.    At approximately 6:00 am, Deputy Smith conducted a traffic stop on the vehicle in Denton County, Texas. Deputy Smith identified **Kent Daniel Burton** and **Kelly Joseph Murphy** as the occupants of the vehicle. Deputy Smith ask for consent to search the vehicle and it was granted. Deputy Smith located approximately 3 ounces of a white crystal substance that field tested positive for methamphetamine. **Burton** and **Murphy** were arrested and placed in the Denton County jail pending state charges.

### *Financial Investigation*

47.    Affiant has obtained a Currency Transaction Report showing that **Krambeck** deposited $11,471 in currency into two of her accounts on October 23, 2008. The bank

statements for Hammer Time Custom Remodeling, LLC (HTCR)[7] show deposits of $11,848.30, on that same day. On the next day there are two deposits to the HTCR account totaling $23,939.77. Records from Wells Fargo Bank show the $23,939.77 deposit was comprised of a $9,370.00 Official Check #0675419517 from Wells Fargo dated October 24, 2008 made payable to HTCR which was purchased with cash by **Myoshia Wylynn Nance**, a $9,740 Cashiers Check #2984506 from Bank of America purchased by Taliashe Authorlee (who is an associate of Thomas Gerry) and a $4,829.77 Compass Bank Cashier's Check purchased by Clifton Reynolds and made payable to HTCR. Records from Wells Fargo Bank show on October 27, 2008, there was a $14,210.00 deposit into the HTCR account. The deposit was comprised of a cash deposit of $4,430.00 and two cashiers checks from First Convenience Bank #1214369 and 1214372 both purchased by Kimberly Krambeck[8] dated October 25, 2008 for $5000.00 and $4,780.00 respectively. Affiant believes that all of these deposits were made with proceeds of Thomas L. Gerry's drug trafficking.

48.    On October 27, 2008 - the day that HTCR closed on the purchase of the residence at 2022 Cherry Circle, Grand Prairie, Texas, a $36,000 transfer was made to the HTCR account from an account of Pear Tree Acquisitions, LLC. In connection with the purchase of that residence the title company closing papers show that HTCR delivered a Cashier's Check in the amount of $69,361.70 from Wells Fargo Bank to the title company. Wells Fargo records show that on October 27, 2008, **Thomas Gerry**, on behalf of HTCR made a withdrawal of $69,361.70 to purchase the cashier check. **Krambeck** executed all of the documents for HTCR at the closing.

49.    Wells Fargo Bank records reflect that **Brian Perryman** is the President of Pear Tree Acquistions LLC. A Currency Transaction Report (CTR) filed by Wells Fargo Bank reflects that **Brian Perryman** made a $35,000.00 cash deposit on October 27, 2009 and on that same date he requested that $35,000 be wire transferred from the Pear Tree Acquistions LLC account to the HTCR account. **Perryman** also made a $1,000.00 wire transfer to the HTCR account as well. Affiant believes that the cash deposits made into the Pear Tree Acquisitions accounts were the proceeds of Thomas Gerry's drug trafficking.

50.    A Report of Cash Payments over $10,000 Received in a Trade or Business (IRS Form 8300) reflects that **Thomas Gerry d/b/a Hammer Time Custom Remodeling** paid $19,300 in $100 bills to Lone Star Auctioneers of Fort Worth, Texas for the purchase of "Jewelry" at an auction held on March 7, 2009. Although **Gerry** was last released from prison in 2005, the statements of the bank accounts in his name reflect over $280,000 in deposits from

---

[7] The account for HTCR was opened on October 7, 2008. The depository agreement shows that **Thomas Gerry** is the sole manager of HTCR and that **Gerry** and **Krambeck** are signators on the account.

[8] Kimberly Krambeck is the sister of **Brittany Krambeck**.

January 2006 through January 2009.

_Kevin K. Brown_

Kevin K. Brown

Sworn to before me and subscribed in my presence, _August 19_, 2009 at Fort Worth, Texas, at _4:48_ o'clock, p.m.

CHARLES BLEIL
UNDERLINE STATES MAGISTRATE JUDGE
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**